Case number 2013-4404, Plymouth Park Tax Services v. Michael Allen Bowers, et al., are now to exceed 15 minutes per side. Mr. Parris for the appellant. Good morning. May it please the Court, Attorney Scott Parris on behalf of the appellant, Plymouth Park Tax Services. I would request three minutes for rebuttal if that would be acceptable. Very well. Thank you, Your Honor. The matter before this Court is the application of Ohio law, specifically with regard to real estate tax certificates that are purchased by private parties and the interest rates that apply to a Chapter 13 bankruptcy proceeding for their claims. The issue before this Court namely involves there's no dispute that 11 U.S.C. 511 applies to the tax certificate interest rates. There's no argument that Ohio Revised Code 5721 applies in determining that interest rate, but under 5721 of multiple potential interest rates that could be applied. The first is the certificate rate of interest, and that rate of interest is the interest rate that applies at auction when this certificate is sold, and most counties in the state of Ohio are at 18% the face value of their certificates. Summit County, where this case arose, is one of the few counties that actually auctions their certificates down to a rate as low as the one in this case. In this case involved two certificates. One was at the statutory maximum of 18%, the other was at the 0.25% that's at issue in this case today. The second point of interest, and it's sort of a lifecycle of these certificates, is once a notice of intent to foreclose has been filed by the tax lien certificate holder, it's Plymouth Park's contention that an 18% interest applies pursuant to 5721 38. That code section again sets forth those two differing periods and application of different interest rates depending on the timeframe at issue. The statute generally was passed in order to provide revenue for the counties in the state of Ohio on unpaid real estate tax certificates. They created sort of built in incentives for private parties to purchase these certificates. One of them was the power to file foreclosure on behalf of the government entity. The other is once foreclosure is filed, they obtain this interest sort of to get the time value of this investment and that interest rate goes up to that 18%. They also get their foreclosure fees which were awarded in the underlying case of this matter at the bankruptcy court level. We've got two potential ways of awarding or calculating the interest rate. One is, I guess, one is based on the notice to foreclose where you can redeem for 18% interest rate and the other is the face value of the certificate. If it's not clear which of these two should be done, should be awarded as a matter of law, is it, are we kind of, as a court, stuck with making a policy determination or maybe you wouldn't agree that the law is rather unclear? I think we wouldn't be here if it were crystal clear. So I certainly acknowledge that that is a concern. There's two ways that I would go about arguing this point. First is, in this particular case, a notice of intent to foreclose was filed by Plymouth Park Tax Services in February of 2012. Foreclosure proceeding itself was also filed by the county prosecutor in April of 2012. In May, the bankruptcy was filed and in June, the civil foreclosure court had stayed that civil proceeding. So in this case, we're dealing with a situation where the notice of intent and the foreclosure were both done pursuant to the statutory provisions of Ohio Revised Code. On the date the bankruptcy was filed, those were pending and those remain pending today. So it's Plymouth Park's contention that it's clear that the 18% applies here. That 18% interest rate is not just contained in the redemption statute of 572138, but also extends to 572139, which is the foreclosure judgment statute, holding that or providing that that 18% applies for any foreclosure judgments. I think, I'm sorry, go ahead. Let me ask you this. How or to what extent should we take the applicable bankruptcy code into account in deciding what interest rate to apply? Because presumably the goal of bankruptcy, to the extent we should consider that, is once us would like to have a way that the bankrupt party could eventually exit the bankruptcy. And so the, under the code, the interest rate would be set by tax law. But I guess the, up to now, the bankruptcy court has sort of thought that, has sort of taken issue, well they haven't taken issue with your position, they just haven't embraced it. To what extent should we take the applicable bankruptcy code and rehabilitating the debtor in making our decision here? I think the court should look to 11 U.S.C. 511 for some guidance on that issue. You know, 11 U.S.C. 511 was largely put into place as a response to the Till versus SCS case out of the U.S. Supreme Court, which set forth that secured creditors generally should be able to obtain an interest rate that period of time. The Till rate was, is generally the prime rate plus a few points for that risk. So normally it falls between 5 and 8 percent in the bankruptcy proceeding. You know, the Congress, it would be Plymouth's Park argument that Congress, when it enacted 511 of the bankruptcy code, did so specifically to exempt governmental entities or creditors from being held to that Till ceiling. That is, again, as I said, between 5 and 8 percent generally because most statutes for taxes in particular provide for a substantially higher interest rate. And I think that some of the policy considerations behind that include just the definition of taxes generally. These are not consumer debts. These are civil obligations that individuals owe in these circumstances. So it's sort of a policy consideration in that regard. I believe, and I would posit to this Court, that the bankruptcy appellate panel's conclusion that the .25 percent interest applies, even though it's a technical reading potentially of 5721 and the application of 511, falls outside the purposes of 511. Meaning you're actually putting them in a position where they're prejudiced above any other secured creditor. Any other secured creditor would get at a minimum that Till rate. And I, and I believe that it sort of falls outside the purposes of the 511 to begin with. And that would be our argument with regard to that. Of course, 18 percent is pretty hefty, especially if it runs from the date of the default. And what that would mean for a lot of these people is that, not that you would get 18 percent, but they would lose the house or you proceed with the foreclosure. It's a possibility, yes, Your Honor. Yes, and then there is some equitable arguments in that regard. I would, I would argue it would be up to the Ohio legislature to change that if they felt the need to do so. But, you know, I would revert to, one of the points I would like to make regarding the BAP decision is they rested on 5721.37, former A3, A through C of the revised code, which is a tolling provision for bankruptcy statute purposes. Basically, the way the BAP Court applied this, and I know this is DeNova Review, but I think it's helpful in sort of understanding where Plymouth Park comes from in this regard. Basically, what they held in that case was that this tolling provision applies any time a bankruptcy has been filed, regardless of the certificate's life cycle, meaning where it's at in its life cycle. They cited the Lakeview Holdings case, which basically held that if a notice of intent is filed and a foreclosure is not filed within the 120 days required by Ohio law, that that notice of intent is void, that it's, but, but could be refiled at any time. And the bankruptcy appellate panel seemed to say, well, once this bankruptcy's filed, it's not precluding you from filing a notice of intent again. The result of that is, if this bankruptcy were dismissed for any reason, which happens often in Chapter 13 bankruptcies, normally Plymouth Park would go into their stayed foreclosure case, lift that stay, and proceed with their foreclosure. The decision of the BAP Court really sort of implies that that somehow is a nullity now. They must go back and file a notice of intent, and that's not the case. And the context of that 572137 former A3, A through C, is really about tolling where a notice of intent has never been filed, or where it's been filed and it's expired. It should not be applied, Plymouth Park argues, to a situation where that 18 percent has already been effectuated and was in effect at the time the bankruptcy was filed. There's not a lot of ambiguity in 511 with regard to applying that. The Again, we believe the interpretation of this section of the revised code would would lead to potentially an unjust result. As I mentioned again, the treatment of the creditors in the Chapter 13, at a minimum they should be treated as a secured creditor, which they are, but under the dictates of 511, Plymouth Park argues that that 18 percent should apply. And I think with that, that concludes the substance of our argument, unless anyone has any further questions. No, that's fine. Apparently no further questions at the moment. Okay, thank you, Your Honor. Thank you. Morning. Morning. If the court please, Robert Whittington on behalf of the appellees, Michael and Margarita Bowers, the Chapter 13 debtors in this case, and it's our position that in this case the appellant, Plymouth Park, is seeking to convince the panel that it should ignore the 0.25 percent interest rate it auction and also ignore the applicable case law in this matter to reach the conclusion that it's entitled to receive interest at the rate of 18 percent on the tax certificate in dispute. The debtors respectfully believe that the courts below concluded that pursuant to Ohio law, the interest rate negotiated between the county and Plymouth Park should not be ignored. And this is the bankruptcy reporter 612 that both sides have cited in their briefs. The specific holding of that court decision was that the creditor is entitled to the interest rate established by the tax certificate auction on the debtors' delinquent taxes. And in this case that negotiated rate is the 0.25 percent rate that appears on the face of the tax certificate. Plymouth Park's argument here is that it is 18 percent on the tax certificate in dispute despite the fact it negotiated for a much smaller rate at the tax auction simply because it filed a notice of foreclosure with the county treasurer prior to the time the debtors filed their Chapter 13 case. And the debtors submit that nothing in Ohio revised code section 5721.38B would compel this conclusion. It's our position that a plain reading of section 5721.38B sets forth a lump sum amount that a person entitled to redeem the real estate from a tax lien must pay in order to satisfy the tax lien after a foreclosure case has been initiated. This interpretation, as pointed out by the bankruptcy panel below, ignores other statutory provisions and this court must give full meaning to all the provisions in the statutory scheme. These include 5721.37A, 3B, and C, which the bankruptcy appellate panel observed refers to the certificate rate of interest that continues to accrue during any extension of time in a case where a bankruptcy has been filed is here. Now that certificate rate of interest is defined by the Ohio statute at 5721.30G as the rate of simple interest per year not to exceed 18 percent per year fixed by the county treasurer with respect to any tax certificate sold or transferred pursuant to a negotiated sale. So in this case that certificate rate of interest is the 0.25 percent rate that appears on the face of the tax certificate. We believe that Plymouth Park's reliance on section 5721.38B is misguided because the lump sum redemption procedure referred to in that statute is not the same thing as the repayment of a tax claim by way of periodic payments in a Chapter 13 plan, which is what the debtors are doing in this case. The bankruptcy court correctly analyzed this Ohio statute in reaching the conclusion that this statute does not compel the payment of the 18 percent interest on the tax certificate in dispute. If the bankruptcy petition had not been filed, would you concede that the rate then jumps up to the 18 percent? Well, I think you'd have to then look at what transpired afterwards. If a bankruptcy was entered, then I think that the 18 percent rate would apply, but... Your argument essentially, ignoring the bankruptcy, is there's got to actually be a foreclosure instead of just the filing of the notice of intent. Yes. And the foreclosure didn't occur because of the filing of the bankruptcy. That's right. So if the bankruptcy petition was withdrawn, as your opposing counsel said happens in these Chapter 13's, then you proceed to foreclosure jumps up. I would concede that if the Chapter 13 case were dismissed because of the debtors non-compliance with the terms of the plan, and that the stays then no longer in effect, and a foreclosure case goes to a judgment and a foreclosure decree is issued, that foreclosure decree could and by law would have to specify the 18 percent rate. So if there isn't a bankruptcy and there is a foreclosure, when does the rate jump up to 18 percent? Is it backdated to when the notice of intent to foreclose was filed, or does the rate go up as of the date of foreclosure? I would think it would not go into effect until the foreclosure is actually filed. Filed or occurs? I mean, you've filed a notice of intent, then other steps have to occur under Ohio law to actually effectuate the foreclosure. Well, I think if the foreclosure is actually filed and that foreclosure results in a decree of foreclosure, that decree would specify that the amount of the principal owed plus the 18 percent, plus the costs and everything else that's set forth in the statute. But the plus the 18 percent dated starting when? I think it would start on the date the decree would be entered. So it doesn't jump the rate up retroactively to something having happened in the past? I don't see that there's anything in the statute that could be read that way. So you're saying that just never occurred because of the automatic stay in the bankruptcy? That's right. And I think... I did one other question. I thought that your opposing counsel did say that at some point here they had gone back to and gotten relief from the stay and the foreclosure did occur. Did I misunderstand that? Yes, a foreclosure had been filed and the debtors then filed the petition. So the petition was filed between the time the foreclosure document was filed and the decree entered? Right, there never was a petition that prevented the entry of the decree. Prevented the entry of any further action in the foreclosure case. Thank you. Thank you. So in its brief, Plymouth Park has argued that the debtors chapter 13 plan can be viewed as a redemption plan within the meaning of 5721.38C2 and the debtors submit that there's nothing in applicable law that would compel that conclusion. However, even assuming it could be regarded as a redemption plan, 5721.38C2 still requires the payment of the certificate redemption price, which references the certificate rate of interest, which in this case is 0.25%. So even if the debtors chapter 13 plan is regarded as a redemption, which I don't think it is, and none of the courts below have thought it was, even if that were the case, it still doesn't get us to the 18%. It's still the certificate rate of interest, which is the 0.25%. And Plymouth Park has argued in its brief and otherwise that 5721.39C2, which is the judgment provision, somehow adds support to its argument. And we respectfully disagree and we submit that 5721.39C2 has no relevance to the present case because that statute specifically spells out what a foreclosure decree must contain in these tax certificate cases. And since there never was a foreclosure judgment entered against the debtors in this case, we simply feel that that particular statute is irrelevant. So in summary, based on the debtors' analysis of the statutory scheme regarding tax certificate sales, the debtors in this case respectfully submit that the appropriate rate of interest to be paid by them in their chapter 13 plan is 0.25%, which is the rate shown on the face of the tax certificate and not the 18% rate that simply would not be applicable under these facts. And that would conclude my argument. All right, thank you very much. Any rebuttal? First, I want to... Do you agree that absent a bankruptcy petition that the rate actually goes up or a higher rate goes into effect when the foreclosure decree is entered? Well, no, I do not agree with that, Your Honor. And Plymouth Park's position is that once, under the statutory language, once that notice of intent is filed and the foreclosure proceeding is filed, both of which occurred in this case, that interest rate jumps at that point. And it's... Wait a minute. Go ahead, I'm sorry. Foreclosure proceeding could be dismissed for some reason. It could be. You didn't do it right or whatever, right? Yes, yes. And if you read the Lakeview Holdings case, I think, and the decision of the BAP panel below, that that would essentially revert the interest rate back to the certificate rate until... Well, follow me for a second. Yes, no problem. So you have to get a decree then to effectuate the foreclosure. That's correct. The decree is what ends up then I don't believe that's how the code reads. Well, if you don't have a decree, somebody isn't going to just start voluntarily paying the higher rate. No, you're right, but the way that this operates... Let me follow through, and then you can tell me why I'm wrong. So if you get a decree, then at what date does the higher rate that the decree allows you to charge begin? The date of the decree, as Mr. Whittington says, or an earlier date? And I sigh because I don't do the foreclosure side of this, so I'm not a hundred percent certain. I believe it actually goes back to the to the date where the notice of intent is filed. That's my understanding of the code and how it reads. Because the reason that I'm asking the question is if you never got to the decree stage, because you're stayed by the filing of the bankruptcy petition, if a decree is necessary to jump up the rate, regardless of whether the rate jumps up from the date of the decree or whether it jumps up from an earlier date, the notice of intent, if you never got to that point, then I don't understand why the debtors would be worse off in connection with the interest rate because they filed the bankruptcy petition. In other words, you're saying it's going to jump up automatically because they filed the bankruptcy petition in in lieu of the decree that you've sort of admitted is necessary to get the rate to go up. Well again, I don't I don't believe the decree is necessary. I think it's the notice of intent and the filing of foreclosure that does it. And the way this code operates is once those things happen under Ohio law, both the foreclosure attorney fees, whether it be a prosecutor fee or a private attorney, and the code sets this forth, or the interest attached to that certificate which attaches to the under Ohio law that is necessarily that the debtor is obligated to individually, the property is obligated to that debt in a sense. It attaches to the property. It doesn't attach to the debtor necessarily under the way that the revised code is written in the way it operates today. With that, I believe my time is up. Thank you for your time. Thank you, and the case is submitted.